**SEABOCK PRICE APC**
Dennis Price SBN 279082
Christopher A. Seabock SBN 279640
117 E. Colorado Blvd., Ste. 600
Pasadena, California 91105
Phone: 323-616-0490
dennis@seabockprice.com

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **Brad Diaz,**<br><br>        Plaintiff,<br><br>    v.<br><br><br>**Atlantic 777, Inc.,** a California<br>    Corporation;<br>**Atlantic Property Management, Inc.,** a<br>    California Corporation,<br><br><br>        Defendant(s). | Case Number:<br><br><br>**Complaint for Damages and Injunctive Relief for Violations of:**<br>Americans with Disabilities Act, Unruh Civil Rights Act, Disabled Persons Act |

1

Complaint, The Olive Center

Plaintiff Brad Diaz alleges the following upon information and belief based upon investigation of counsel, except as to his own acts, which he alleges upon personal knowledge:

**INTRODUCTION**

1. Signed into law on July 26, 1990, the Americans with Disabilities Act was a landmark piece of legislation that promised equal access to disabled individuals. Hailed as a long overdue "independence day" by President George H.W. Bush at the time of signing, the law recognized that disabled Americans had been overlooked by prior civil rights laws and were entitled to independence and dignity in all aspects of society.

2. Recognizing that the ADA lacked sufficient remedies, the State of California amended the Unruh Civil Rights Act and Disabled Persons Act to ensure those who are denied equal rights under the ADA have sufficient motivation and remedies to enforce the law.

3. However, more than 30 years later, California still has businesses in flagrant violation of the law.

4. Plaintiff is a disabled individual and a member of a protected class of individuals guaranteed rights under state and federal laws.

5. Plaintiff visited the Olive Center facility located at or about 643 S. Olive Street, Los Angeles, CA 90014 ("Olive Center") three times in April 2025. On the first occasion, Plaintiff was threatened with removal by the police due to his use of a bipedal mobility device. On the other two occasions, Plaintiff was outright denied entry on that same basis.

6. Plaintiff brings this action against Atlantic 777, Inc. and Atlantic Property Management, Inc. ("Defendants") for failure to design, maintain, construct, and operate the Olive Center in compliance with applicable accessibility laws.

Seabock / Price

2

Complaint, The Olive Center

**PARTIES**

7.  Plaintiff, at all times relevant and as alleged herein, is a resident of California, County of Los Angeles.

8.  Defendant Atlantic 777, Inc. owned, leased, or operated the Olive Center in April 2025.

9.  Defendant Atlantic 777, Inc. owns, leases, or operates the Olive Center currently.

10. Defendant Atlantic Property Management, Inc. owned, leased, or operated the Olive Center in April 2025.

11. Defendant Atlantic Property Management, Inc. owns, leases, or operates the Olive Center currently.

12. Every landlord, tenant, owner or operator of a place of public accommodation is separately charged with compliance with the ADA. 28 CFR § 36.201(b). Liability for noncompliance persists regardless of any contractual apportionment of responsibility between them. *Botosan v. Paul McNally Realty*, 216 F.3d 827, 833-34 (9th Cir. 2000).

13. At all times relevant to this complaint, Defendants had and continue to have an ongoing obligation to assess, identify, and remove all barriers to access where readily achievable to do so, and to implement the most accessible alternative when full compliance is not readily achievable.

14. Plaintiff does not know the true names of all Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of and alleges a joint venture and common enterprise by all such defendants. Plaintiff is informed and believes that each of the defendants herein is responsible in some capacity for the events herein alleged or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the defendants are ascertained.

**Seabock / Price**

3

Complaint, The Olive Center

**JURISDICTION AND VENUE**

15. This Court has subject-matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181, *et seq.,* and 28 U.S.C. § 1332.

16. Plaintiff has standing pursuant to Article III based on his knowledge, as alleged herein, of Defendants' discriminatory policies, which deter him from returning to the Olive Center, as he knows he will continue to be discriminated against should he do so. Additionally, due to the severity of Defendants' treatment of Plaintiff, upon obtaining injunctive relief, Plaintiff intends to return to the Olive Center to ensure compliance with the law and that he and other similarly situated individuals will not experience discrimination at the Olive Center in the future.

17. This Court has supplemental jurisdiction over Plaintiff's non-federal claims pursuant to 28 U.S.C. § 1367, because they are so related to Plaintiff's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

18. This Court has personal jurisdiction over Defendants because they conducted and continue to conduct business in the State of California, County of Los Angeles.

19. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391 because Plaintiff resides in this District and Defendants are subject to personal jurisdiction in this District, and a substantial portion of the conduct complained of herein occurred in this District.

**FACTUAL ALLEGATIONS**

20. Plaintiff has crushed vertebrates in his back, bilateral hip displacement, bilateral shoulder rotator tears, and bilateral carpal tunnel syndrome. He suffers from chronic pain and his injuries prevent him from walking and sitting for long periods without great difficulty and pain. He is a member of a protected class of individuals guaranteed rights under state and federal law.

21. To address the extreme pain Plaintiff suffers when sitting for extended periods and to relieve pressure from his lower back, he has used a bipedal mobility device manufactured by Segway, rather than a wheelchair, for more than ten years.

Complaint, The Olive Center

22. This device allows Plaintiff to ambulate without walking while remaining standing. He has his state-issued disability placard attached to it to alert people that he uses it as a mobility device.

23. Plaintiff had ordered some pieces from a jeweler with an office located inside the Olive Center.

24. The Olive Center is a facility open to the public, a place of public accommodation, and a business establishment as those terms are understood under the Americans with Disabilities Act, Unruh Civil Rights Act, and Disabled Persons Act.

25. Unfortunately, on the dates of Plaintiff's visits, the Olive Center failed to comply with ADA and California standards as they relate to persons with disabilities like Plaintiff.

26. Plaintiff went to the Olive Center on April 21, 2025, with the intention to avail himself of its goods, services, privileges, advantages, or accommodations ("Amenities"). Specifically, Plaintiff had a meeting with the jeweler.

27. On arrival, Plaintiff proceeded through the Olive Center lobby on his mobility device. The Olive Center security guard stopped Plaintiff and told Plaintiff he could not use it in the building. Though it was already labeled with a placard, Plaintiff informed the security guard that it was a mobility device and he could not be denied entry on that basis. Plaintiff then proceeded to the jeweler's office for his meeting.

28. Shortly after arriving at the office of the jeweler, an Olive Center staff member entered the office and threatened to call the police if Plaintiff did not leave immediately. Plaintiff explained to the staff member that the challenged equipment was a mobility device and showed his state-issued disability placard, but the staff member continued to argue with Plaintiff. Ultimately, Plaintiff concluded his meeting, arranging to return to meet with the jeweler the following day.

29. Plaintiff returned to the Olive Center on April 22, 2025. As he entered, the security guard physically blocked his entry. Plaintiff again showed his state-issued disability placard but the guard continued to refuse him entry. Plaintiff was forced to wait outside the Olive Center for the jeweler to exit and to conduct his business on the street.

30. Plaintiff returned to the Olive Center again on April 23, 2025, to receive the jewelry pieces he had purchased. Plaintiff found the doors locked on arrival and he asked the guard through the door

Seabock / Price

5

Complaint, The Olive Center

to make a modification to their prohibition based on his disability and his need to use his mobility device. The guard refused.

31. Shortly thereafter, the staff member who had followed him into the jeweler's office two days prior walked outside the building. Plaintiff advised that he needed to visit the jeweler to pick up his pieces and requested a modification to the stated prohibition based on his disability. The staff member refused and, again, threatened to call the police on Plaintiff.

32. Plaintiff was in contact with the jeweler to let him know that he was arriving at the Olive Center.

33. The jeweler came down to meet Plaintiff outside the building, but the staff member prevented him from doing so and ushered him back inside. Plaintiff had to call the jeweler and again arrange to meet him outside to receive his merchandise before he was finally able to leave. The entire ordeal took more than an hour.

34. These incidents were incredibly frustrating for Plaintiff. The Olive Center security guard put his hands on Plaintiff in his efforts to bar his entry, Olive Center staff barged into a closed-door meeting between Plaintiff and the jeweler, and Plaintiff was twice outright prohibited entry to the Olive Center and forced to engage in a jewelry purchase on the street, rather than behind closed doors, all due to his disability and mobility device.

35. There was no point at which Olive Center staff requested Plaintiff limit his speed when using his device, offered any other form of mobility device to allow Plaintiff access to the building, or offered any other modification or accommodation to the Olive Center's policy.

36. In fact, rather than offering a modification of the policy, the Olive Center explicitly denied Plaintiff's requested modification without providing any alternative and actively inhibited him from conducting his business.

37. Despite the above, Plaintiff overcame the difficulties and intentional impediments presented to him and completed his purchase of the jewelry.

38. On information and belief, the above conditions currently exist or the policies that allowed them to occur have not been changed.

6

Complaint, The Olive Center

39. The above barriers relate to and impact Plaintiff's disability. Plaintiff personally encountered these barriers.

40. Plaintiff seeks removal of all barriers to access pertaining to his disability.

41. While the Olive Center persists in its blanket prohibition, Plaintiff is unable to return. However, Plaintiff has made additional purchases from the jeweler and is having to use a third party to attend the appointments in his place. Upon obtaining injunctive relief, Plaintiff will be able to return to the Olive Center to attend to his business, personally. Further, particularly because of the way he was treated by the Olive Center staff, Plaintiff intends to return to the Olive Center upon obtaining injunctive relief in this matter to ensure Defendants' compliance with the law.

42. Plaintiff seeks to have all barriers related to his disability removed. See *Doran v. 7-Eleven*, 524 F.3d 1034 (9th Cir. 2008); *Thurston v. Midvale Corp.*, 39 Cal. App. 5th 634, 653–54 (2019) (holding that once a plaintiff encounters one barrier at a site, they can sue to have all barriers that relate to their disability removed regardless of whether they personally encountered them). During litigation, Plaintiff will thoroughly investigate the property and amend the complaint to provide the full scope of remediation required.

43. According to the Centers for Disease Control, 11% of California adults live with a mobility disability. Removal of barriers to access—such as those listed above—makes California more accessible not just to these individuals, but also the thriving tourism industry and benefits the state as a whole. Removal of these barriers is justified not only to comply with state and federal law, but also to provide a distinct benefit, not just to the plaintiff, but to the public at large.

44. The actions taken by Olive Center staff were done intentionally and with full awareness of Plaintiff's disability, evidenced both by Plaintiff's verbally telling them of it, and the presence of his placard.

45. The actions taken by Oliver Center staff were done with the intent of denying Plaintiff access to the building.

46. Plaintiff was explicitly denied accommodations by Olive Center staff, including being denied the ability to obtain his purchase inside the building.

7

Complaint, The Olive Center

# I. FIRST CAUSE OF ACTION:
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### Title 42 United States Code §§ 12101-12189
### (On behalf of Plaintiff and against all Defendants)

47. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

48. Under the Americans with Disabilities Act, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation are offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. 42 U.S.C. § 12182(a). Discrimination as defined there includes a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

49. "A public accommodation shall make reasonable modifications in its policies, practices, or procedures to permit the use of other power-driven mobility devices by individuals with mobility disabilities, unless the public accommodation can demonstrate that the class of other power-driven mobility devices cannot be operated in accordance with legitimate safety requirements that the public accommodation has adopted pursuant to § 36.301(b)." 28 C.F.R. § 36.311(b).

50. "Safety requirements must be based on actual risks and not on mere speculation, stereotypes, or generalizations about individuals with disabilities." 28 C.F.R. § 36.301(b).

51. "The Department [of Justice] recognizes that the Segway® PT provides many benefits to those who use them as mobility devices, including a measure of privacy with regard to the nature of one's particular disability, and believes that in the vast majority of circumstances, the application of the factors described in § 36.311 for providing access to other-powered mobility devices will result in the admission of the Segway® PT." 28 C.F.R. Part 36 Appendix A.

Complaint, The Olive Center

## II. SECOND CAUSE OF ACTION:
## VIOLATION OF THE UNRUH CIVIL RIGHTS ACT
### California Civil Code §§ 51-53
### (On behalf of Plaintiff and against all Defendants)

52. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

53. The Unruh Civil Rights Act ("UCRA") guarantees, among other things, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever within the jurisdiction of the State of California. Cal. Civ. Code § 51(b).

54. The UCRA provides that any violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code § 51(f).

55. Defendants' acts and omissions, as herein alleged, have violated the UCRA by, among other things, denying, or aiding, or inciting the denial of, Plaintiff's rights to full and equal use of the accommodations, advantages, facilities, privileges, or services offered.

56. A defendant's liability for violations of the Unruh Civil Rights Act entitles a plaintiff to actual damages, as well as treble actual damages or an amount no less than the minimum statutory penalty prescribed by law, for each occasion in which the plaintiff was denied full and equal access. Cal. Civ. Code §§ 52(a).

57. These behaviors were unreasonable and done with full knowledge and understanding of their intent and are overt discrimination of the type that shocks the conscience. *Briteramos v. Cuts*, 2019 U.S. Dist. Lexis 248162; 18-cv-06400 (C.D. Cal. 2019).

9

Complaint, The Olive Center

### III. THIRD CAUSE OF ACTION:
### VIOLATION OF THE CALIFORNIA DISABLED PERSONS ACT
### California Civil Code §§ 54.1
### (On behalf of Plaintiff and against all Defendants)

58. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

59. Like the Unruh Civil Rights Act, the California Disabled Persons Act ("CDPA") guarantees, among other things, that persons with disabilities are entitled to full and equal access to places of public accommodation and all "places to which the general public is invited" within the jurisdiction of the State of California. Cal. Civ. Code § 54.1(a)(1).

60. The CDPA provides that any violation of the ADA is a violation of the CDPA. Cal. Civ. Code § 54.1(d).

61. Defendants' acts and omissions, as herein alleged, have violated the CDPA by, among other things, denying Plaintiff full and equal use of the accommodations, advantages, facilities, privileges, or services offered.

62. Because the violation of the ADA interfered with the rights of an individual with a disability under §§ 54, 54.1 or 54.2, Defendants are also each responsible for statutory damages, i.e., a civil penalty. Cal. Civ. Code § 54.3.

63. It is a violation of the CDPA to deny or "interfere with admittance to or enjoyment of" a public facility such as the Olive Center.

64. The actions taken by Olive Center staff were done with the explicit intention to deny and interfere with Plaintiff's access to the Olive Center.

65. The actions taken by the Olive Center staff succeeded in denying access to the Olive Center and interfered with Plaintiff's access to and enjoyment of the facility.

10

Complaint, The Olive Center

**PRAYER**

In light of the above, Plaintiff prays that this Court award damages and provide relief as follows:

66. A determination that Defendants are liable for violations of the Americans with Disabilities Act, Unruh Civil Rights Act, and Disabled Persons Act.

67. For preliminary injunctive relief, compelling Defendants to modify their policy prohibiting Plaintiff's mobility device in such a way that he can safely access the Olive Center during his ongoing business there.

68. For permanent injunctive relief, pursuant to and appropriate to comply with the Americans with Disabilities Act, compelling Defendants to allow the use of Segways as mobility devices within the Olive Center or, in the alternative, to provide reasonable modifications in their prohibition to allow the safe use of Plaintiff's mobility device or alternative mobility devices within the Olive Center.

69. For injunctive relief, pursuant to and appropriate to ensure compliance with the Americans with Disabilities Act, requiring that Defendants obtain biennial Certified Access Specialist ("CASp") architectural inspections of the subject facility to verify ongoing ADA compliance and to follow those inspections' recommendations of all readily achievable barrier removal. The first inspection shall occur within 90 days of judgment, or another date certain determined to be just by the Court.

70. For injunctive relief, pursuant to and appropriate to ensure compliance with the Americans with Disabilities Act, requiring implementation of accessibility policies and requiring annual employee training on providing full and equal access to clients or customers with disabilities. This shall be implemented within 90 days of judgment, or another date certain determined to be just by the Court.

71. For actual damages subject to proof under the Unruh Civil Rights Act and Disabled Persons Act.

72. For treble actual damages, or in no case an amount less than the statutory minimum damages prescribed by statute for each occasion Plaintiff was denied full and equal access.

11

Complaint, The Olive Center

73. Reasonable attorney fees, litigation expenses, and costs of suit, pursuant to 42 U.S.C. § 12205, Cal. Civ. Code § 52, and Cal. Civ. Code § 54.3.

Date: March 19, 2026

**SEABOCK PRICE APC**

Dennis Price
Attorney for Plaintiff

**Seabock / Price**

12

Complaint, The Olive Center